IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MORRIS ANDREW BANDER,<br><br>Defendant. | No. 2:20-CR-82 |

**STATEMENT OF FACTS**

By signing below, the parties and their respective counsel agree that if this case had gone to trial, the government's evidence would have proven the following facts beyond a reasonable doubt:

1. From approximately January 2014 through November 2017, in the Eastern District of Virginia and elsewhere, the defendant, MORRIS ANDREW BANDER, knowingly and willfully conspired with Joseph T. Poling, Raisa N. Ison, and others to commit an offense against the United States, which was to sell and transport, or cause to be transported, stolen goods in interstate commerce.

2. During the conspiracy, the defendant was the co-owner of Service Solutions for IT, Incorporated, which did business as Portsmouth Pawn, a pawn shop located in Portsmouth, Virginia. The manager of the pawn shop was Joseph T. Poling, and the assistant manager was Raisa N. Ison. Poling and Ison were employees of BANDER.

3. The object of the conspiracy was to obtain money by purchasing stolen goods for less than retail value and then reselling the goods for a profit via eBay, an internet-based

marketplace. One or more conspirators purchased the stolen goods, knowing the goods to have been stolen, from known shoplifters.

4. The conspirators knew that it was against eBay's policies to sell stolen property on the eBay website. eBay buyers were unaware that they were purchasing stolen property.

5. After the eBay buyer agreed to purchase a good, one or more conspirators shipped the stolen merchandise via UPS, the United States Postal Service, and other shipping services. During the conspiracy, stolen goods were shipped throughout the United States.

6. BANDER tasked Poling with the responsibility of managing the day-to-day operations of the business, which included negotiating the amount the pawn shop would pay the shoplifters for the stolen merchandise, ensuring that the goods were advertised on eBay, and overseeing their shipment.

7. Poling made it known to the shoplifters that he preferred to buy new merchandise with the retail packaging intact. In some instances, Poling informed shoplifters of the exact type and model numbers of the merchandise he wanted to buy.

8. The shoplifters stole merchandise such as power tools, printer ink cartridges, computer accessories, pet products, and shaving razors, from local retailers such as Walmart, Target, Home Depot, and Auto Zone.

9. The shoplifters took the stolen merchandise to the pawn shop where one or more conspirators paid them cash for the merchandise.

10. Ison was primarily responsible for advertising the goods on eBay, tracking the sales, and shipping the stolen goods to the buyers.

11. Multiple times per week, BANDER went to the pawn shop to provide cash to Poling. BANDER understood and agreed that Poling was to use this cash to pay shoplifters for stolen goods brought into the pawn shop.

12. BANDER also authorized one or more co-conspirators to withdraw cash from an automated teller machine (ATM) using a PayPal debit card to finance the purchase of stolen goods. During the conspiracy, the ATM cash withdrawals totaled more than $106,000.

13. Poling provided regular – usually monthly – written reports to BANDER detailing the pawn shop's sales figures.

14. At some point early in conspiracy, BANDER and Poling decided to deemphasize purchasing used items and focus on buying new, unopened goods.

15. BANDER regularly spoke with Ison about the eBay accounts and tracked the items sold and monies received.

16. As part of the store's legal requirements, regular reports regarding purchased items were uploaded into an online database accessible by law enforcement. These reports reflected, among other things, that individuals repeatedly visited the store to sell new, unopened consumer goods in quantities inconsistent with personal use.

17. During BANDER's regular visits to the store, he accessed the second floor where the conspirators kept racks of new, unopened stolen goods.

18. On February 6, 2014, Ison established an eBay account under the user ID "ptownpawn2014." This eBay account was used by one or more conspirators during the conspiracy to advertise and sell stolen goods via the internet in furtherance of the object of the conspiracy. This eBay account was associated with a PayPal account with an account number ending in -0391.

19. PayPal is an online payment system that facilitates the electronic transfer of money between and among people and businesses.

20. On or about May 31, 2017, BANDER established a PayPal account with an account number ending in -9803. This account was also used to receive money from eBay sales.

21. The aforementioned PayPal accounts were linked to a TowneBank bank account ending in -5375, such that money from PayPal was directed by one or more conspirators into the TowneBank account. BANDER owned and controlled the TowneBank account.

22. Over the course of the conspiracy, approximately $893,000 was deposited from those PayPal accounts into the TowneBank account. This dollar amount represents proceeds from stolen goods that were transported in interstate commerce.

23. In November 2017, law enforcement officers executed a search warrant on Portsmouth Pawn. BANDER was at the pawn shop on the day of the search. Law enforcement officers seized thousands of goods, such as printer ink cartridges, power tools, a kitchen sink, computer equipment, and various pet-related products from the pawn shop. The vast majority of these goods were in unopened retail packaging. Officers also found discarded anti-theft devices, such as "spider wrap," which stores affix to their products to deter theft.

The acts taken by MORRIS ANDREW BANDER and his co-conspirators in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case nor does it identify all of the persons with whom the defendant may have engaged in illegal activities      .

4

*United States v. Morris Andrew Bander, 2:20cr82*

                                                    RAJ PAREKH
                                                    ACTING UNITED STATES ATTORNEY

By:     */s/ Randy Stoker*
              Randy Stoker
              Assistant United States Attorney

              */s/ Anthony C. Mozzi*
              Anthony C. Mozzi
              Assistant United States Attorney

*United States v. Morris Andrew Bander, 2:20cr82*

I agree that the United States could prove the facts to which I have stipulated beyond a reasonable doubt at a trial in this matter and that my decision to enter into this stipulation is knowing, intelligent, and voluntary.

_____
MORRIS ANDREW BANDER
Defendant

I am the attorney for defendant MORRIS ANDREW BANDER. His decision to enter into this factual stipulation is knowing, intelligent, and voluntary, and is made with the advice of counsel.

_____
Andrew A. Protogyrou, Esq.
Defense Counsel

6